IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KEITH HARRIS,                          §
                                       §
          Plaintiff,                   §
                                       §
v.                                     §
                                       §    CIVIL ACTION NO. H-14-1312
ELISEO "AL" CANTU, JR. in his          §
official capacity as chairman          §
of the Texas Veterans                  §
Commission, et al.,                    §
                                       §
          Defendants.                  §

MEMORANDUM AND ORDER

     Pending are Defendants' Motion for Summary Judgment (Document

No. 24) and Plaintiff's Replacement Motion for Summary Judgment

(Document No. 28).   After carefully considering the motions,

responses, replies, and applicable law, the Court concludes for the

following reasons that Plaintiff's motion should be granted.

I. Background

     The material facts in this case are undisputed.   Plaintiff

Keith Harris ("Plaintiff") in 1996 enlisted in the United States

Army at the age of 18 in his home state of Georgia.[1]   Plaintiff

served four years in the Army and was honorably discharged, after

which he returned to Georgia, obtained a job, married, and started

_____

[1] Document No. 28, ex. 2 ¶ 3 (Decl. of Keith Harris).

a family.[2]  Plaintiff moved to Houston, Texas in November 2004, and has been a Texas resident for the past ten years.[3]

Plaintiff began taking college courses when he was in the Army, and after leaving the Army he used his federal GI Bill educational benefits to continue his college education.[4]  Plaintiff received a bachelor's degree in business from the University of Houston-Downtown in December 2011.[5]  Plaintiff enrolled as a law student at the University of Houston Law Center in August 2012,[6] and began his third year of law school in the fall of 2014.[7] Having exhausted his GI Bill benefits, Plaintiff is paying for his tuition and fees on his own.[8]

The Texas Hazlewood Act ("the Act") exempts Texas veterans from paying tuition, dues, and certain fees at Texas public universities if they have exhausted their federal educational benefits, but only if they were Texas residents at the time of their enlistment.  TEX. EDUC. CODE § 54.341(a) (veteran shall be exempt from tuition, dues, and certain fees "provided the person

---

[2] Id., ex. 2 ¶¶ 3-4.

[3] Id., ex. 2 ¶ 4.

[4] Id., ex. 2 ¶ 5.

[5] Id.

[6] Id.

[7] See Document No. 9 ¶ 9.

[8] Document No. 28, ex. 2 ¶ 5.

seeking the exemption currently resides in this state and entered the service at a location in this state, declared this state as the person's home of record in the manner provided by the applicable military or other service, or would have been determined to be a resident of this state for purposes of Subchapter B at the time the person entered the service."). Plaintiff meets all the requirements of the Act except for the requirement that he must have entered the military while a resident of Texas.[9]

Plaintiff filed suit against numerous state employees in their official capacities, seeking to enjoin as unconstitutional his exclusion from the Act's benefits based on his enlistment when he was a Georgia resident.[10] The remaining Defendants include: Texas Veterans Commission Chairman Eliseo "Al" Cantu, Jr, Vice Chair James Scott, Secretary Richard McLeon, IV, Member Jake Ellzey, and Member Daniel Moran (collectively the "Texas Veterans Commissioners"); Texas Higher Education Coordinating Board ("THECB") Chairman Harold Hahn, Vice Chair Robert Jenkins, Jr., Member Sada Cumber, Member Christopher Huckabee, Member Jacob Monty, Member Janelle Shepard, Member John Steen, Jr., Member David Teuscher, and Member Raymond Paredes (collectively the "THECB Members"); and University of Houston Board of Regents Chairman Jarvis

---

[9] Document No. 6 ¶ 42; Document No. 6-2.

[10] Document No. 1 (Orig. Compl.); Document No. 6 (1st Am. Compl.).

3

Hollingsworth, Vice Chairman Tilman Fertitta, Secretary Welcome Wilson, Jr., Member Beth Madison, Member Spencer Armour, III, Member Roger Welder, Member Durga Agrawal, Member Paula Mendoza, and Member Peter Taaffe (collectively the "Board of Regents").[11]

Plaintiff alleges that the Act's "fixed-point residency requirement"--both facially and as applied to him--violates his rights to equal protection and to travel under the United States Constitution.[12]   Plaintiff also asserts violation of 42 U.S.C. § 1983, and seeks declaratory and injunctive relief.[13]   The parties filed cross-motions for summary judgment.[14]

---

[11] By Order dated November 24, 2014, University of Houston President Renu Khator, then Texas Governor Rick Perry, and then Texas Attorney General Greg Abbott were all dismissed as Defendants for lack of subject matter jurisdiction.   Document No. 32.

[12] Document No. 6 ¶¶ 2, 57-60.

[13] Id. ¶¶ 61-71.  At the Court's initial conference with the parties, the parties agreed, inter alia, that Plaintiff would withdraw without prejudice his motion for preliminary injunction and Defendants agreed Plaintiff would not be required to pay tuition and fees for the Fall 2014 and Spring 2015 semesters pending resolution of the case.  If Plaintiff did not finally prevail on his claims, then his unpaid tuition and fees became due and owing by him within 30 days after final resolution.  Document Nos. 17, 19.

[14] Document Nos. 24, 28.

4

## II. Objections

Defendants raise five objections to statements and evidence in Plaintiff's motion.[15]

Defendants' hearsay objection to Senator Van de Putte's statement cited in footnote 4 of Plaintiff's motion is OVERRULED because Plaintiff does not offer the statement in evidence, nor is it offered for the truth of the matter asserted; instead, Plaintiff appears to include it as mere rhetorical flourish.

Defendants' objection that the Act does not require exhaustion of federal benefits is OVERRULED because the Act's exemption does not apply to the extent that federal benefits are available to pay the covered tuition and fees.[16]

Defendants' objection that Plaintiff's attachment to his motion of Defendants' answers to interrogatories does not limit

_____

[15] Document No. 34 at 2-3.

[16] *See* TEX. EDUC. CODE § 54.341(e) ("The exemption from tuition, fees, and other charges provided for by this section does not apply to a person who at the time of registration is entitled to receive educational benefits under federal legislation that may be used only for the payment of tuition and fees if the value of those benefits received in a semester or other term is equal to or exceeds the value of the exemption for the same semester or other term. If the value of federal benefits that may be used only for the payment of tuition and fees and are received in a semester or other term does not equal or exceed the value of the exemption for the same semester or other term, the person is entitled to receive both those federal benefits and the exemption in the same semester or other term. The combined amount of the federal benefit that may be used only for the payment of tuition and fees plus the amount of the exemption received in a semester or other term may not exceed the cost of tuition and fees for that semester or other term.").

Defendants' proof is SUSTAINED.  Defendants were not precluded from offering additional justifications for the Act's fixed-point residency requirement beyond those stated in their Supplemental Answer to Interrogatory at Document No. 28-10.

Defendants' relevancy objection to the University of Houston's mission statement and published information about its graduates is SUSTAINED.

Defendants' objection to Plaintiff's statement that funds will exist for a constitutionally-mandated expansion of the Act is OVERRULED.  This is mere argument.  Both parties argue their separate views on the consequences of a change in the law in terms of future costs, but their argument does not bear upon the constitutionality of the challenged proviso.

## III. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  Where both parties move for summary judgment, the court independently reviews each motion with its supporting proof. First Colony Life Ins. Co.

v. Sanford, 555 F.3d 177, 180 (5th Cir. 2009).  Summary judgment is appropriate where, as in this case, the material facts are undisputed and the only issue before the court is a pure question of law.  Kornman & Associates, Inc. v. United States, 527 F.3d 443, 450 (5th Cir. 2008).

"The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  City of Cleburne, Tex. v. Cleburne Living Ctr., 105 S. Ct. 3249, 3254 (1985) (collecting cases); see also Noatex Corp. v. King Const. of Houston, L.L.C., 732 F.3d 479, 484 (5th Cir. 2013) ("[S]tatutes should be construed whenever possible so as to uphold their constitutionality.") (quoting United States v. Vuitch, 91 S. Ct. 1294, 1298 (1971)).

## IV. Analysis

A.   Constitutionality of the Act

The Hazlewood Act provides in relevant part:

(a) The governing board of each institution of higher education shall exempt the following persons from the payment of tuition, dues, fees, and other required charges, including fees for correspondence courses but excluding general deposit fees, student services fees, and any fees or charges for lodging, board, or clothing, *provided the person seeking the exemption currently resides in this state and entered the service at a location in this state, declared this state as the person's home of record in the manner provided by the*

7

> *applicable military or other service, or would have been*
> *determined to be a resident of this state for purposes of*
> *Subchapter B at the time the person entered the service:*
>
> . . .
>
> (4) all persons who were honorably discharged from the
> armed forces of the United States after serving on active
> military duty, excluding training, for more than 180 days
> and who served a portion of their active duty during:
>
> . . .
>
> (E) the Persian Gulf War which began on August 2, 1990,
> and ends on the date thereafter prescribed by
> Presidential proclamation or September 1, 1997, whichever
> occurs first[.][17]

TEX. EDUC. CODE § 54.341(a) (emphasis added).[18] Plaintiff argues that the Act's fixed-point residency requirement is subject to heightened scrutiny, but that it fails even under rational basis review because Defendants can point to no legitimate government interest rationally related to the exclusion of Texas resident veterans from Hazlewood Act benefits solely on the basis of their state residency status at the time of their enlistment.[19] Defendants argue that rational basis review applies, and advance

---

[17] *See* Document No. 28 at 6; Document No. 28-2 at 13 of 14 (Plaintiff served on active duty in the Army from August 1996 through July 2000).

[18] The Act limits this exemption to a maximum of 150 credit hours and provides that it does not apply to tuition and fees for which the veteran is entitled to receive federal educational benefits.  TEX. EDUC. CODE § 54.341(c), (e).

[19] Document Nos. 28, 33, 36.

several reasons as justifications for the fixed-point residency requirement.[20]

Both the standard of review and the outcome of this case are governed by a trio of Supreme Court opinions involving challenges to fixed-point residency requirements under the Equal Protection Clause and the constitutional right to travel or migrate.

In <u>Zobel v. Williams</u>, 102 S. Ct. 2309 (1982), the Court struck down an Alaska statute that distributed dividends from the state's oil revenue to Alaska residents in amounts dependant on the duration of their residency, with residents receiving one dividend unit for every year of residence after 1959. The Court explained that "[w]hen a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment," and declined to analyze the case under the right to travel, noting that "the nature and source of that right have remained obscure" and that "[i]n reality, right to travel analysis refers to little more than a particular application of equal protection analysis." <u>Id.</u> at 2313 & n.6.[21] The Court declined to decide whether heightened scrutiny

---

[20] Document Nos. 24, 34, 35.

[21] Four justices joined the opinion of the Court and also stated that the right to travel--"or, more precisely, the interest in free interstate migration"--provided an independent basis for holding Alaska's statute unconstitutional. <u>Zobel</u>, 102 S. Ct. at 2316 (Brennan, J., concurring). Justice O'Connor concurred in the judgment, writing that the statute should be invalidated under the right to travel, which she based in the Privileges and Immunities

applied because it found that the statutory scheme could not survive even rational basis scrutiny. Id. at 2313.

Alaska argued that the distinction between recent and long-term residents was rationally related to the purposes of (1) creating financial incentives for individuals to establish and maintain residency in Alaska, (2) encouraging prudent management of the fund, and (3) apportioning benefits in recognition of residents' past contributions. Id. The Court found that the first two interests were not rationally served by providing increased dividends based on residency during the 21 years since statehood and before the statute's enactment, and that the objective of rewarding citizens for past contributions "is not a legitimate state purpose." Id. at 2313-14 (citing Shapiro v. Thompson, 89 S. Ct. 1322, 1330 (1969) ("Appellants' reasoning . . . would permit the State to apportion all benefits and services according to the past tax contributions of its citizens. The Equal Protection Clause prohibits such an apportionment of state services."); Vlandis v. Kline, 93 S. Ct. 2230, 2234-35 & n.6 (1973) ("[A]pportion[ment of] tuition rates on the basis of old and new residency . . . would give rise to grave problems under the Equal Protection Clause of the Fourteenth Amendment.")). The Zobel Court

---

Clause. Id. at 2319-2323 (O'Connor, J., concurring). Justice Rehnquist, the lone dissenter, believed that the statute was an economic regulation that clearly survived rational basis review under the Equal Protection Clause. Id. at 2323-2325 (Rehnquist, J., dissenting).

held that "Alaska's reasoning could open the door to state apportionment of other rights, benefits, and services according to length of residency," which "would permit the states to divide citizens into expanding numbers of permanent classes" and "would be clearly impermissible." Id. at 2315.

Three years later, in Hooper v. Bernalillo Cnty. Assessor, 105 S. Ct. 2862 (1985), the Court struck down a New Mexico statute that provided a $2,000 tax exemption for Vietnam veterans, provided that they were New Mexico residents before May 8, 1976.   The Court followed its Zobel opinion both by evaluating the law under the Equal Protection Clause rather than the right to travel, and by declining to determine whether the statute was subject to heightened scrutiny, finding instead that it could not pass even rational basis review.  Id. at 2866 & n.6.  The Hooper Court found that the New Mexico statute's fixed date residency requirement divided resident Vietnam veterans into two groups, creating "'fixed, permanent distinctions between . . . classes of concededly bona fide residents' based on when they arrived in the State." Id. at 2865-66 (quoting Zobel, 102 S. Ct. at 2312).

New Mexico argued that the distinction was justified by the goals of encouraging veterans to settle in the state and of expressing gratitude to its "own citizens for honorable military service." Id. at 2866.  The Court found no rational relationship between New Mexico's tax exemption, which applied only to veterans

11

who had been residents long before the statute was enacted, and the desire to encourage immigration of veterans. _Id._ at 2866-67. As to the second justification, the Court acknowledged the nation's longstanding policy of rewarding veterans for their past contributions, but rejected the distinction between veterans based on their pre-war residency:

> Those who serve in the military during wartime inevitably have their lives disrupted; but it is difficult to grasp how New Mexico residents serving in the military suffered more than residents of other States who served, so that the latter would not deserve the benefits a State bestows for national military service.
>
> . . .
>
> The State may not favor established residents over new residents based on the view that the State may take care of "its own," if such is defined by prior residence. Newcomers, by establishing bona fide residence in the State, become the State's "own" and may not be discriminated against solely on the basis of their arrival in the State after May 8, 1976.

_Id._ at 2867-68. Accordingly, the Court found that the statute "creates two tiers of resident Vietnam veterans, identifying resident veterans who settled in the State after May 8, 1976, as in a sense 'second-class citizens,'" and that this distinction was not supported by any identifiable state interest and was unconstitutional under the Equal Protection Clause. _Id._ at 2869.[22]

---

[22] Three justices dissented, asserting that the state's limited resources provided a rational basis for limiting the benefits it provided to those veterans who were returning home to New Mexico. _Hooper_, 105 S. Ct. at 2869-2874 (Stevens, J., dissenting).

Finally, in <u>Attorney Gen. of New York v. Soto-Lopez</u>, 106 S. Ct. 2317 (1986), the Court struck down a New York statute providing a one-time civil service preference to veterans who entered the armed forces while residing in New York. Justice Brennan, writing for a four-justice plurality, applied heightened scrutiny and found that the statute violated the constitutional right to travel or, more specifically, the right to migrate, because it operated permanently to penalize veterans who had exercised their right to migrate, and also violated the Equal Protection Clause. <u>Id.</u> at 2325. Chief Justice Burger and Justice White each concurred in the judgment, but found that the law did not survive rational basis scrutiny under the Equal Protection Clause. <u>Id.</u> at 2326-2328.[23]

All six justices who agreed that New York's system violated the Equal Protection Clause rejected four justifications for the law proffered by the state of New York: (1) the encouragement of New York residents to join the military; (2) the compensation of residents for service in time of war by helping veterans reestablish themselves upon returning home; (3) the inducement of

---

[23] Chief Justice Burger wrote that <u>Zobel</u> and <u>Hooper</u> provided the appropriate framework, and that because the law did not survive rational basis scrutiny, it was improper to address the right to travel and heightened scrutiny. <u>Soto-Lopez</u>, 106 S. Ct. at 2326-2328 (Burger, C.J., concurring). Justice White found that heightened scrutiny was inapplicable because the right to travel was insufficiently implicated. <u>Id.</u> at 2328 (White, J., concurring). Justices O'Connor, Rehnquist, and Stevens--the three <u>Hooper</u> dissenters--dissented again in <u>Soto-Lopez</u>. <u>Id.</u> at 2328-2333.

veterans to return to New York after their service; and (4) the employment of a "uniquely valuable class of public servants" who possess useful experience acquired through their military service. Id. at 2324-25. The plurality found that "[a]ll four justifications fail to withstand heightened scrutiny on a common ground-- each of the State's asserted interests could be promoted fully by granting bonus points to *all* otherwise qualified veterans." Id. at 2324 (emphasis in original).[24] The plurality further observed:

> Compensating veterans for their past sacrifices by providing them with advantages over nonveteran citizens is a long-standing policy of our Federal and State Governments. . . . Nonetheless, this policy, even if deemed compelling, does not support a distinction between resident veterans based on their residence when they joined the military. Members of the Armed Forces serve the Nation as a whole. While a serviceperson's home State doubtlessly derives indirect benefit from his or her service, the State benefits equally from the contributions to our national security made by other service personnel.

Id. at 2325. Accordingly, the Court struck down the New York statute, holding that "[f]or as long as New York chooses to offer its resident veterans a civil service employment preference, the Constitution requires that it do so without regard to residence at the time of entry into the services." Id. at 2325-26.

The Hazlewood Act's fixed-point residency requirement, which limits benefits to veterans who were residents of Texas when they

---

[24] The concurring justices found these four justifications to be irrational. Id. at 2326-2328.

enlisted in the armed services, is for constitutional purposes indistinguishable from the provision in Soto-Lopez.  Because the Act--in light of the foregoing Supreme Court decisions--cannot survive even rational basis review, the Court follows the majority opinions in Zobel and Hooper in applying rational basis review under the Equal Protection Clause.  See Hooper, 105 S. Ct. at 2866 ("As in Zobel, if the statutory scheme cannot pass even the minimum rationality test, our inquiry ends.").  This is consistent with the narrowest approach taken by the Soto-Lopez Court, where six justices found the law invalid under the Equal Protection Clause and only four of them applied heightened scrutiny based on the right to migrate.[25]  See Marks v. United States, 97 S. Ct. 990, 993 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'") (citation omitted).[26]

---

[25] Furthermore, including the three dissenters, a majority of the Soto-Lopez justices found that the case should be resolved under rational basis review.

[26] Plaintiff argues that the Supreme Court's subsequent opinion in Saenz v. Roe, 119 S. Ct. 1518 (1999) mandates heightened scrutiny.  Document No. 36 at 3.  In Saenz, seven justices applied heightened scrutiny to strike down a California law limiting Temporary Assistance to Needy Family ("TANF") benefits to newcomers in their first year as California residents.  119 S. Ct. at 1527 ("Neither mere rationality nor some intermediate standard of review should be used to judge the constitutionality of a state rule that discriminates against some of its citizens because they have been

To survive rational basis review, the Hazlewood Act's fixed-point residency requirement must rationally further a legitimate state purpose. *See, e.g.,* <u>Zobel</u>, 102 S. Ct. at 2313. Defendants argue that "the exemption is rationally related to Texas's interests in the education of current Texas schoolchildren who are at risk of not completing high school, postsecondary education of those schoolchildren, and economic development," and that "[t]he requirement that an applicant for the Hazlewood exemption have 'entered the service at a location in this state' is necessary to the State's interest in preserving the educational wellbeing of Texas's current youth."[27]  Defendants reason that

> [t]he exemption incentivizes future conduct--that is, the attainment of a postsecondary education--by encouraging current Texas students to complete high school, with the understanding that if those students chose military service, Texas will pay for at least a portion of their college education upon their return and admission to a Texas public institution of higher education.[28]

Promoting education plainly is a legitimate state interest, and by providing financial assistance for postsecondary education, the Act

---

domiciled in the State for less than a year.").  Although instructive, the <u>Saenz</u> opinion focused on the right to travel rather than equal protection, and the challenged law did not involve a fixed-point residency requirement. <u>Zobel</u>, <u>Hooper</u>, and <u>Soto-Lopez</u> still provide the controlling framework for addressing Plaintiff's equal protection challenge to the Hazlewood Act's fixed-point residency requirement.

[27] Document No. 24 at 12.

[28] <u>Id.</u>

plausibly--albeit tenuously--encourages Texas high school students to graduate, join the military, *and* return to attend college and graduate school after exhausting their federal benefits. However, Plaintiff does not challenge the Act's provision of financial assistance, but rather its exclusion of Texas resident veterans who enlisted in other states, and Defendants do not explain how *not* providing benefits to veterans like Plaintiff furthers Texas's interest in its students' education. *Cf.* <u>Soto-Lopez</u>, 106 S. Ct. at 2324 ("[E]ach of the State's asserted interests could be promoted fully by granting bonus points to *all* otherwise qualified veterans.") (emphasis in original). Thus, the Act's fixed-point residency requirement is not rationally related to Texas's legitimate interest in promoting education.

Defendants next argue that

> another rational basis for the residency requirement is to grow the Texas economy by encouraging Texas veterans to return to the state after honorably completing their military service. More specifically, it encourages these Texas residents, upon their discharge from military service, to return to Texas to obtain a post-secondary education. Not only will those veterans have the skills, discipline and professionalism that only a military experience can provide, they will also be educated.[29]

This argument supports the granting of educational benefits to veterans under the Hazlewood Act, but again, the *exclusion* of Texas resident veterans who enlisted in other states is not rationally

---

[29] <u>Id.</u> at 13.

related to growing Texas's economy.  Indeed, to deny educational benefits to veterans like Plaintiff who have come to Texas to obtain employment and to advance their education, and who as veterans and Texas residents "have the skills, discipline and professionalism that only a military experience can provide," would seem to undermine this rationale for the Hazlewood Act.  *Cf.* Soto-Lopez, 106 S. Ct. at 2327 (Burger, C.J., concurring) ("[T]he State asserts that the preference is targeted at a very special group of veterans who have both knowledge of local affairs and valuable skills learned in the military, and who therefore would make exceptional civil servants.  But these 'special attributes' are undeniably possessed by all veterans who are currently residents of New York.").

Third, Defendants argue that "[b]y requiring the beneficiary to have been a Texas resident at the time of enlistment, the legislature could have determined that former Texas residents are more likely to return to Texas after they are discharged and stay."[30]  This rationale was expressly rejected in Soto-Lopez:

> [T]he State contends that it is permissible to encourage past-resident veterans to settle in New York after their military service ends.  While such a preference might indeed encourage such veterans to return, it simultaneously has the effect of *discouraging* other veterans from settling in New York who are aware that civil service appointments will be hard to obtain.  As we observed in Zobel and reiterated in Hooper, "[t]he

---

[30] Id.

18

> separation of residents into classes hardly seems a likely way to persuade new [residents] that the State welcomes them and wants them to stay." Moreover, <u>Hooper</u> made it clear that a "selective incentive" such as New York provides here "would encounter the same constitutional barrier faced by the [New Mexico] statute's distinction between past and newly arrived residents."

106 S. Ct. at 2327 (Burger, C.J., concurring) (citations omitted) (emphasis in original); *see also* <u>id.</u> at 2324 (plurality op.) (without fixed-point residency requirement, "both former New Yorkers and prior residents of other states would be drawn to New York after serving the Nation.").

Defendants next argue that "[t]he 'fixed point' residency requirement further prevents veterans from relocating to Texas solely to take advantage of a free post-secondary education, obtaining a portable degree, and then relocating out of Texas."[31] Inhibiting the relocation of veterans to or from Texas is not a legitimate state interest; it squarely contradicts the constitutional right to migrate. *See* <u>Saenz v. Roe</u>, 119 S. Ct. 1518, 1530 (1999) ("Citizens of the United States, whether rich or poor, have the right to choose to be citizens 'of the State wherein they reside.' U.S. Const., Amdt. 14, § 1. The States, however, do not have any right to select their citizens."); <u>id.</u> at 1528 (purpose of deterring welfare applicants from migrating to California "would be unequivocally impermissible"); <u>Zobel</u>, 102 S.

---

[31] <u>Id.</u> at 13-14.

Ct. at 2314 n.9 ("Of course, the State's objective of reducing population turnover cannot be interpreted as an attempt to inhibit migration into the State without encountering insurmountable constitutional difficulties."); <u>Shapiro v. Thompson</u>, 89 S. Ct. 1322, 1329 (1969) (overruled on other grounds by <u>Edelman v. Jordan</u>, 94 S. Ct. 1347 (1974)) ("This Court long ago recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement.") (purpose of inhibiting migration of needy people is "constitutionally impermissible").

Finally, Defendants argue that the fixed-point residency requirement "serves to balance the State's interest in supporting veterans by providing the tuition exemption benefit to Texas veterans and, in some instances, their dependants, while controlling the cost so that it is affordable to taxpayers and Texas public higher education institutions."[32] The defect in this rationale is that Plaintiff and other similarly situated veterans *are* Texas veterans, and Texas may not discriminate against its more recent residents in favor of more established residents simply to control costs. *See* <u>Soto-Lopez</u>, 106 S. Ct. at 2325 ("Once veterans establish bona fide residence in a State, they 'become the State's

---

[32] <u>Id.</u> at 14.

'own' and may not be discriminated against solely on the basis of
[the date of] their arrival in the State.'") (collecting cases);
id. at 2328 (Burger, C.J., concurring) ("The State may not favor
established residents over new residents based on the view that the
State may take care of 'its own,' if such is defined by prior
residence.  Newcomers, by establishing bona fide residence in the
State, become the State's 'own' and may not be discriminated
against solely on the basis of their arrival in the State after [a
fixed date].") (quoting Hooper, 105 S. Ct. at 2868); Zobel, 102 S.
Ct. at 2314 ("[A]pportion[ment of] tuition rates on the basis of
old and new residency ... would give rise to grave problems under
the Equal Protection Clause of the Fourteenth Amendment.") (quoting
Vlandis v. Kline, 93 S. Ct. 2230, 2235 n.6 (1973)); id. at 2317-18
(Brennan, J., concurring) (Citizenship Clause "does not provide
for, and does not allow for, degrees of citizenship based on length
of residence.  And the Equal Protection Clause would not tolerate
such distinctions.  In short, as much as the right to travel,
equality of citizenship is of the essence in our Republic."); Saenz
119 S. Ct. at 1528 ("In short, the State's legitimate interest in
saving money provides no justification for its decision to
discriminate among equally eligible citizens.").

Accordingly, Defendants have not shown that the Hazlewood
Act's fixed-point residency requirement is rationally related to
any legitimate state interest.  The Act impermissibly discriminates

between equally situated Texas residents who have served their country honorably in the armed forces, based solely upon their state residency when they enlisted in the military, in violation of the Equal Protection Clause.

This conclusion draws support from two additional persuasive opinions. The California Supreme Court in 1992 unanimously struck down a substantially similar statute providing veterans benefits including tuition and living expenses for students, but only if the veteran had been "at the time of entry into active duty a native of, or bona fide resident of [California] or, if a minor at that time, entered active duty while in [California] and had lived in [California] for six months immediately preceding entry into active duty." Del Monte v. Wilson, 824 P.2d 632 (1992). The court held that Zobel, Hooper, and Soto-Lopez compelled the conclusion that California's statute could not survive rational basis scrutiny and was unconstitutional under the Equal Protection Clause. Id.

Second, the Texas Attorney General in 1998 was questioned about the constitutionality of the fixed-point residency requirement in the Hazlewood Act, and issued an opinion letter which--based on his review of Zobel, Hooper, Soto-Lopez, and the California Supreme Court's Del Monte decision--concluded:

> [W]e believe a court would conclude that the Education
> Code section 54.203(a) is unconstitutional because it
> invidiously or irrationally discriminates against
> honorably discharged, resident veterans who did not
> reside in Texas at the time they entered the service.

> Using the rational-basis standard, we believe a court
> would consider all of Texas' proffered rationalizations,
> but we can think of none that the Supreme Court has not
> already declared insufficient to justify the
> classification. In particular, we do not think a court
> would deem discrimination against one group of honorably
> discharged, resident veterans rationally related to
> saving the state money.

Tex. Att'y Gen. Op. No. DM-468 (1998).[33] This Opinion has not been withdrawn in the 17 years since it was issued. *See also* Matthew B. Allen, <u>The Unconstitutional Denial of A Texas Veterans Benefit</u>, 46 Hous. L. Rev. 1607 (2010) (discussing, *inter alia*, <u>Zobel</u>, <u>Hooper</u>, <u>Soto-Lopez</u>, and the 1998 Texas Attorney General Opinion, and arguing that the Hazlewood Act's fixed-point residency requirement is unconstitutional and unfair).

These additional well-reasoned opinions, while not binding on this Court, are in accord with the conclusion that the Act unconstitutionally discriminates between Texas resident veterans based on their residency at that point in time when they enlisted in the Armed Forces. Defendants cite to no authority upholding the constitutionality of the Hazlewood Act's fixed-point residency requirement or upholding any comparable provision from any other jurisdiction decided during the approximate 30 years since the Supreme Court's decisions in <u>Zobel</u>, <u>Hooper</u>, and <u>Soto-Lopez</u>.

---

[33] The opinion is found in the record at Document No. 24, ex. 5 and at Document No. 28, ex. 1.

23

Accordingly, the Court holds that the fixed-point residency requirement found in TEX. EDUC. CODE § 54.341(a) violates the Equal Protection Clause because it unconstitutionally discriminates against Plaintiff, an honorably discharged Texas veteran, for the sole reason that when he enlisted in the United States Army in 1996 he was a resident citizen of another state.

B.   <u>Severability</u>

Having found that the Hazlewood Act's fixed-point residency requirement is unconstitutional, the question arises whether the entire Act must be held unconstitutional, in which event Plaintiff would receive no benefit, or if only the offending proviso can be severed and excised. *See* <u>Califano v. Westcott</u>, 99 S. Ct. 2655, 2663 (1979) ("'Where a statute is defective because of underinclusion, . . . there exist two remedial alternatives: a court may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion.'") (quoting <u>Welsh v. United States</u>, 90 S. Ct. 1792, 1807 (1970) (Harlan, J., concurring)).

Plaintiff urges that the unconstitutional exclusion is severable and that severance is the proper remedy.[34]   The Texas

---

[34] Document No. 28 at 21-23.

Veterans Commissioners agree that this is the appropriate remedy "because such relief would be in the best interests of veterans currently receiving the benefit."[35]   The other Defendants state no specific position on severability; but Defendants' response argues that given "the Legislature's apparent concerns regarding the increasing cost of providing this benefit to veterans and their families, severance of the statute is contrary to the Legislature's intentions."[36]

Whether unconstitutional provisions of a state statute are severable is a matter of state law.   Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott, 647 F.3d 202, 210 (5th Cir. 2011) (citing Virginia v. Hicks, 123 S. Ct. 2191, 2198 (2003)).   In Texas, severability of statutes is governed by the Code Construction Act, Section 311.032 of the Texas Government Code.   Id.   The present enactment of the Hazlewood Act contains neither a severability

---

[35] Document No. 34 at 8.

[36] Id. at 8-10.

clause nor a proscription on severability.[37]   Hence, Section 311.032(c) applies:

> In a statute that does not contain a provision for severability or nonseverability, if any provision of the statute or its application to any person orn circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.

TEX. GOV'T. CODE § 311.032(c);[38] *see also* <u>Quick v. City of Austin</u>, 7 S.W.3d 109, 115 (Tex. 1999) ("[I]f any provision of the statute

---

[37] Interestingly, the 1959 amendment to the Hazlewood Act which, among other things, added for the first time the fixed-point residency requirement, did contain a severability clause providing:

> If any Section, sentence, clause or part of this Act is held to be unconstitutional or invalid for any reason, such decision shall not affect the remaining portions of this Act. The Legislature hereby declares that it would have passed this Act and each Section, sentence, clause or part thereof despite the fact that one or more Sections, sentences, clauses or parts thereof be declared unconstitutional or invalid for any reason.

Act of July 15, 1959, 56th Leg., 2d C.S., ch. 12, §4, 1959 Tex. Gen. Laws 99, 101. Over the years the Act has been amended and recodified by the Legislature numerous times, and at least since the Amendment that enlarged benefits to include Persian Gulf War veterans, which includes Plaintiff, the Legislature has not incorporated either a severability or a nonseverability clause.

[38] *See also* TEX. GOV'T CODE § 312.013(a) ("Unless expressly provided otherwise, if any provision of a statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.").

is held to be invalid, the invalidity does not affect other provisions that can properly be given effect in the absence of the invalid provisions.").

In applying Section 311.032(c) of the Texas Code Construction Act, the unconstitutional fixed-point residency requirement, which as observed above has not always been a part of the Hazlewood Act, may readily be severed from the body of the Act without affecting other provisions and applications of the Act.  Thus, the principal legislative objective to reward honorably discharged qualified Texas veterans with educational benefits may continue unabated. The specific unconstitutional clause in Section 54.341(a), which the Court severs and declares as null and void, is shown in the stricken language that follows:

> (a) The governing board of each institution of higher education shall exempt the following persons from the payment of tuition, dues, fees, and other required charges, including fees for correspondence courses but excluding general deposit fees, student services fees, and any fees or charges for lodging, board, or clothing, provided the person seeking the exemption currently resides in this state ~~and entered the service at a location in this state, declared this state as the person's home of record in the manner provided by the applicable military or other service, or would have been determined to be a resident of this state for purposes of Subchapter B at the time the person entered the service~~:

TEX. EDUC. CODE § 54.341(a).  *See also* <u>Del Monte</u>, 824 P.2d at 643 (extending benefits to all veterans when striking down unconstitutional exclusion); Tex. Att'y Gen. Op. No. DM-468 ("We

believe a court would conclude that the legislature intended the limitation [in the Hazlewood Act] to be severable from the remainder of the subsection, and the court accordingly would invalidate only the offending fixed-point residency requirement. The remainder of [the Act] would be left intact, and the court thus would extend the tuition exemption to every honorably discharged veteran who satisfies the statutory durational residence requirement.").

C.   Injunctive Relief

Plaintiff has established that the Hazlewood Act's fixed-point residency clause violates the Equal Protection Clause, and the remaining Defendants are involved in the enforcement and administration of the Act,[39] which Defendants no longer dispute.[40] Plaintiff applied for and was denied benefits under the Act based on the unconstitutional restriction, and therefore has a valid cause of action against Defendants under 42 U.S.C. § 1983, pursuant to which he seeks injunctive relief.[41]  *See* Mitchum v. Foster, 92 S. Ct. 2151, 2162 (1972) ("Congress plainly authorized the federal

---

[39] Document No. 32.

[40] *See* Document No. 34 at 2 n.1 ("Defendants withdraw the arguments in paragraph D of their summary judgment motion [that certain Defendants are not connected to the enforcement of the Act or Plaintiff's injury].").

[41] Document No. 6.

courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress.").

A plaintiff seeking a permanent injunction must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, L.L.C., 126 S. Ct. 1837, 1839 (2006).

Because Defendants are entitled to Eleventh Amendment immunity from money damages, Plaintiff is unable to recover his past tuition payments that would not have been required from him but for his having been unconstitutionally excluded from the Act's benefits. Accordingly, Plaintiff has suffered and--if no injunction is issued--will continue to suffer irreparable injury for which money damages are inadequate.[42] Defendants' costs in providing to Plaintiff the tuition and fee waiver to which he is constitutionally entitled are heavily outweighed by the harm to Plaintiff if the waiver is denied, and the public interest is not disserved by requiring Defendants to cease and desist from

---

[42] The parties' agreement mentioned in footnote 13, above, obligates Plaintiff--if the fixed-point of residency is upheld--to pay the full tuition and fees for both semesters within 30 days after final resolution.

violating Plaintiff's rights under the Equal Protection Clause. Accordingly, Plaintiff is entitled to injunctive relief prohibiting Defendants from enforcing against him the unconstitutional statutory provision.

Defendants argue that the precedential effect of this ruling portends a vast expansion of state benefits under the Act, which benefits have already increased dramatically in recent years from $25 million in 2009 to $169 million in 2014.[43] The parties dispute the extent of the incremental cost that the State will incur by awarding the benefits to all qualified honorably discharged Texas veterans. The Court recognizes the State's legitimate concerns over escalating costs of Hazlewood Act benefits. Indeed, just last month the Legislative Budget Board submitted to the new 84th Texas Legislature a comprehensive Report on the Hazlewood Exemption that forecasts tuition and fee waivers, if left unchanged, reaching $379.1 million by 2019, with a majority of the increase being attributable to the Legacy Program that, since 2009, has allowed eligible veterans to pass on their Hazlewood benefits to their children.[44] The mounting costs of Hazlewood Act benefits, of course, implicate policy matters and legislative priorities within the exclusive purview of the Texas Legislature. This Court's

---

[43] *See* Document No. 33, ex. 12 at 6 of 50 (December 2014 Legislative Policy Report on the Hazlewood Exemption).

[44] Id., ex. 12 at 34 of 50 to 35 of 50.

limited federal jurisdiction permits it to render judgment only on the constitutional claim presented by Plaintiff, and on this, the Court is constrained to hold, as the Supreme Court did in Soto-Lopez, that "[f]or so long as [Texas] chooses to offer its resident veterans [educational benefits under the Hazlewood Act] the Constitution requires that it do so without regard to residence at the time of entry into the services." Soto-Lopez, 106 S. Ct. at 2325-26. *See also* Saenz, 119 S. Ct. at 1528 ("[T]he State's legitimate interest in saving money provides no justification for its decision to discriminate among equally eligible citizens.") Accordingly, Plaintiff Keith Harris is entitled to injunctive relief to prevent further unconstitutional discrimination preventing him from receiving Hazlewood Act benefits.

## V. Order

For the foregoing reasons, it is

ORDERED that Defendants' Motion for Summary Judgment (Document No. 24) is DENIED. It is further

ORDERED that Plaintiff's Replacement Motion for Summary Judgment (Document No. 28) is GRANTED, and it is

ORDERED that Defendant members of the Texas Veterans Commission, namely,

Eliseo "Al" Cantu, Jr, in his official capacity as chairman;

James Scott, in his official capacity as vice chair;

Richard McLeon, IV, in his official capacity as secretary;

Jake Ellzey and Daniel Moran, in their official capacities as members, and

Defendant members of the Texas Higher Education Coordinating Board, namely,

Harold Hahn, in his official capacity as chairman;

Robert Jenkins, Jr., in his official capacity as vice chair;

Sada Cumber, Christopher Huckabee, Jacob Monty, Janelle Shepard, John Steen, Jr., David Teuscher, and Raymond Paredes, in their official capacities as members, and

Defendant members of the University of Houston Board of Regents, namely,

Jarvis Hollingsworth, in his official capacity as chairman;

Tilman Fertitta, in his official capacity as vice chairman;

Welcome Wilson, Jr., in his official capacity as secretary;

and Beth Madison, Spencer Armour, III, Roger Welder, Durga Agrawal, Paula Mendoza, and Peter Taaffe, in their official capacities as members,

together with their successors in office in their official capacities as members and/or officers of the Texas Veterans Commission, the Texas Higher Education Coordinating Board, and the

32

University of Houston Board of Regents, respectively, and all persons acting in concert with them or at their direction or subject to their control who receive actual notice of this injunction, are PERMANENTLY ENJOINED from excluding Plaintiff Keith Harris from receiving the benefits of the Hazlewood Act, TEX. EDUC. CODE § 54.3411, solely by reason of the fact that he enlisted in the United States Army at a point in time when he was a resident of a State other than Texas, which exclusion violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 26 TH day of January, 2015.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE